IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jan M. Pheneger,                                             Case No. 3:06CV00821

           Plaintiff,

v.                                                           ORDER

City of Lima, Ohio, et al.,

           Defendants.

This is a case alleging civil rights violations under 42 U.S.C. §§ 1983, 1985, 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, in which plaintiff Jan M. Phenegar alleges that three officers of the Lima, Ohio, Police Department arrested her unlawfully, and, in doing so, used excessive force. She has sued the officers and the City.

Jurisdiction exists under 28 U.S.C. §§ 1331 and 1343.

Pending is defendants' motion under Fed. R. Civ. P. 12(b)(6) to dismiss. For the reasons that follow, defendants' motion shall be granted in part and denied in part.

**Background**

Just after 11:30 p.m. on April 7, 2004, an unmarked tow truck arrived at Pheneger's home in Lima to repossess her car. Pheneger told the truck operator she had made a recent payment on the vehicle and he should not repossess it. The truck operator did not comply with Pheneger's request to see his identification or documentation of authority to repossess her vehicle.

Pheneger called the Lima Police Department and a dispatcher stated police would not stop the truck operator from repossessing her vehicle. The Department dispatched officers Haslett, Dunham, and Engelman to Pheneger's home. On arriving, officers instructed Pheneger not to interfere with the repossession, while she continued to assert she made a payment and repossession was in error.

Officers handcuffed Pheneger. After she complained of severe pain in her arms and wrists, officers tightened the handcuffs and locked them. Pheneger waited in a patrol car while the officers spoke with the truck operator for several minutes. Officers denied her request to change from her nightgown and jacket into more suitable clothing before entering the police cruiser.

After arriving at the police station, Pheneger informed officers she lacked feeling in her arms and wrists due to pressure from the handcuffs.. Officers placed her in a holding room for between thirty and forty-five minutes, without adjusting the handcuffs. Officer Engelman then came to Pheneger's holding room and removed the handcuffs. He demanded Pheneger remove her jacket.

Removing her jacket caused Pheneger tremendous shame and humiliation because under it, she wore only a sheer nightgown. Officer Engleman left the holding room and took Pheneger's jacket, but did not reapply the handcuffs. The handcuffs had caused swelling, redness, and bruising on Pheneger's arms and wrists.

Officer Engelman returned to the holding room after charging Pheneger with obstruction of official business.[1] Thereon, she was released and allowed to return home. Afterward, she sought

---

[1] On appearing in Lima Municipal Court in April, 2004, Pheneger received notice that the criminal charge was dismissed.

medical treatment and underwent surgery for allegedly permanent injuries she sustained while handcuffed.

Phenegar's complaint against the defendant officers and the City alleges: 1) the officers were acting under the color of state law when they violated her right to be free from unreasonable search and seizure, false arrest, excessive force, and malicious prosecution; 2) the City developed and maintains policies, practices and customs that exhibited deliberate indifference to the constitutional rights of persons in the City and specifically to this plaintiff; 3) the officers intentionally acted outside their scope of employment with the City and are personally liable for their actions; and 4) the officers conspired with one another to violate plaintiff's constitutional rights and the conspiracy was motivated by the officers' invidious and discriminatory animus towards women.

Defendants seek dismissal of plaintiff claims as defective on the face of the pleadings pursuant to Fed. R. Civ. P. 12(b)(6).

## Discussion

### A. Plaintiff's Claims

When considering dismissal under Fed. R. Civ. P. 12(b)(6), this court "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002) (citing *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998)).

Plaintiff may plead in the alternative to establish her prima facie case. Fed. R. Civ. P. 8(a)(3). Plaintiff may, therefore, properly allege defendants were furthering a municipal policy, and were thus incapable of conspiring, as the corporation and its agents are a single party and conspiracy requires more than one party under *Dogherty v. American Motors Corp.*, 728 F.2d 334, 339 (6th Cir.

1984). Plaintiff may properly allege, in the alternative, that the officers were acting outside the scope of their employment and thus able to conspire with each other individually. This intra-corporate conspiracy exception is recognized by this circuit in *Johnson v. Hills & Dales General Hospital,* 40 F.3d 837 (6th Cir. 1994).

### 1. Excessive Force

"All claims that police officers used excessive force during an arrest . . . should be analyzed under the rubric of the Fourth Amendment, not the Fourteenth Amendment." *Ciminillo v. Streicher,* 434 F.3d 461, 465 (6th Cir. 2006) (citing *Graham v. Connor,* 490 U.S. 386, 395 (1989)). The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons . . . against unreasonable search and seizures, shall not be violated." U.S. Const. Amend IV. The reasonableness of an action depends "not only on *when* it was made, but also on *how* it is carried out." *Graham* at 395 (citing *Tennessee v. Garner,* 471 U.S. 1, 7-8 (1985) (emphasis in original)).

The inquiry of the "reasonableness of an excessive force claim is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham* at 397.

The court has subsequently recognized the applicability of the Graham rule only when a constitutional claim is covered by a specific amendment. *Ciminillo* at 465 (citing *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997)). Conduct at issue that lies outside of the coverage of a specific amendment will be analyzed under the substantive due process prong of the Fourteen Amendment, therefore the proper inquiry is whether or not plaintiff was "seized." *Id*. The Sixth

Circuit recognizes that police officers "seize" a person "who is the deliberate object of their exertion of force." *Ciminillo* at 466 (citing *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000)).

Plaintiff alleges the officers used excessive force when putting on the handcuffs. Plaintiff further alleges the officers failed to do anything after plaintiff told them that the handcuffs were causing severe pain and swelling to her wrists. Plaintiff states that on removal of the handcuffs her hands were swollen to twice their normal size and red marks and bruising were evident where the handcuffs had been. Plaintiff alleges that she later required surgery and other medical care as a result of the injuries inflicted on her by the excessively tight handcuffs.

Plaintiff asserts a Fourth Amendment excessive force claim against the officer who applied the handcuffs and the other officers present. With regard to her claims against those other officers, the Sixth Circuit has held that a police officer who fails to act to prevent the use of excessive force may be held liable when "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Smoak v. Hall,* 460 F.3d 768, 784 (6th Cir. 2006) (citing *Turner v. Scott,* 119 F.3d 425, 429 (6th Cir. 1977)); *see also Barton v. Norrod,* 106 F.3d 1289, 1299 (6th Cir. 1997) (holding that an officer present where other officers are violating a person's civil rights may have a duty to intervene).

Considering all alleged facts in a light most favorable to the plaintiff, her Fourth Amendment excessive force claim against all individual defendants is adequately pled to withstands defendants' motion to dismiss.

### 2. Municipal Policies and Practices of Indifference to Civil Rights

Plaintiff claims the City has either adopted policies or engaged in practices and customs indifferent towards citizens' civil rights. Plaintiff alleges specifically that the City has implemented

inadequate training, supervision, and discipline, and, as well, fails to investigate misconduct complaints adequately. Consequently, plaintiff claims, the defendant officers did not fear repercussions for their unconstitutional behavior.

A governmental employer of a state official charged under § 1983 cannot be held liable merely on the basis of *respondeat superior* [i.e., simply because it was the official's employer]. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 692-94 (1978). A governmental entity may be held liable under § 1983 for the constitutional torts of its employee only when the entity maintains an official policy or custom, the enforcement of which causes its employees to violate others' constitutional rights. *Id.* at 692.

Municipal liability cannot be based on an isolated act of police misconduct. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). In *Tuttle*, a police officer shot and killed an individual in the course of responding to a reported bar robbery. *Id.* at 810–11. The deceased's widow sued the city under § 1983, alleging a policy of inadequate officer training. *Id.* at 811–13.

The Supreme Court declined to impose municipal liability from merely one incident involving excessive force, reasoning that a contrary result would require unwarranted assumptions. *Tuttle* at 821. For example, governmental liability in that situation would require an assumption policymakers "deliberately chose a training program which would prove inadequate," without proof of such decision. *Id.* at 821, 823.

In *Tuttle*, the Court held municipal liability could not ensue from a single incident of possible misconduct, even though the plaintiff introduced expert testimony evidencing inadequate training. 471 U.S. at 821–22. The plaintiff did not introduce evidence of similar conduct by any other officer

on the police force. *Id*. at 812. Also, plaintiff did not allege the city maintained a policy that officers employ excessive force in apprehending criminal suspects as a general rule. *Id*. at 820.

Furthermore, a policy subjects a municipality to liability only if it is the "moving force of the constitutional violation." *Tuttle*, 471 U.S. at 820 (citing *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)). In *Monell*, a municipality's compulsory maternity-leave policy represented the "moving force" behind the constitutional violation at issue.  436 U.S. at 660, 694. It is more difficult to prove a policy of inadequate training, however, than to prove the unlawfulness of a municipal policy that is unconstitutional on its face. *Tuttle* at 822–23.

Pheneger's claim for municipal liability must fail because she does not meet the Sixth Circuit's articulation of the *Monell* standard, whereby she must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993) (citing *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)).

By alleging a policy of inadequate training, plaintiff undertakes a more difficult burden than were she challenging the constitutionality of an established policy, as in *Monell*. To survive a motion to dismiss on her claim, plaintiff must allege more than a conclusory assertion that a consitutionally violative policy exists.

Plaintiff has not done so: she alleges no inappropriate action on the part of policymakers to support an inference that they consciously chose to provide inadequate training to the City's police officers.

Although plaintiff alleges that the individual officers violated her Fourth Amendment rights, the court's decision in *Tuttle* makes clear the City is not vicariously liable for its officers' actions.

Like the plaintiff in that case, plaintiff here does not allege other, and similar incidents involving either these or other Lima police officers.

Plaintiff also fails to allege that the city maintained a policy that officers apply excessive force as a standard course of procedure. Finally, it is in no way apparent that the alleged policy is the "moving force" behind the constitutional violations for which Pheneger sues.

The motion to dismiss shall be granted with regard to plaintiff's § 1983 claim against the City.

### 3. Action Outside Scope of Officers' Employment

Plaintiff alleges that the defendant officers' conduct while and after taking her into custody constitutes wilful and wanton indifference to her Fourth and Fourteenth Amendment right to be free from unreasonable search and seizure, false arrest, excessive force, and malicious prosecution. If officers' actions were in wilful and wanton disregard for these rights, they were likely outside the scope of the officers' employment policies.

If a tort is considered wilful and malicious, then it is generally not within the scope of employment. *Thomas v. Speedway Superamerica, LLC,* 2006 WL 2788522 at *3 (Ohio App. 9 Dist.) (citing *Baird v. Sickler,* 69 Ohio St.2d 652 (1982)). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Taking Plaintiff's assertions as true (namely, that the officers' conduct was intentionally indifferent to her constitutional rights), the allegations of her complaint, that the actions were outside the scope of the officers' employment, suffice to withstand the motion to dismiss.

### 4. Civil Conspiracy

Lastly, Pheneger alleges the city and individual officers conspired to violate her constitutional rights. Specifically, she asserts that the defendants committed "numerous overt acts" during and in furtherance of the conspiracy. She attributes the conspiracy to defendants' invidious discrimination against women.

The United States Code prohibits conspiracies that deprive a person or class of equal protection or equal privileges and immunities of the laws. 42 U.S.C. § 1985(3).

To establish a § 1985(3) claim, Pheneger must prove: 1) a conspiracy; 2)the object of which is to deprive a person or class of equal protection or equal privileges and immunities of the laws; 3) an act furthering that object; and 4) injury from deprivation of a right or privilege afforded to United States citizens. *Kaylor v. Rankin*, 356 F. Supp. 2d 839, 852 (N.D. Ohio 2005) (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005)).

Additionally, Pheneger must allege and prove that class-based discriminatory animus served as a motive for the civil conspiracy. *Kaylor*, *supra*, 356 F. Supp. 2d at 852–53 (dismissing a § 1985 claim for failure to allege facts demonstrating class-based discriminatory animus motivated officers' conduct); *see also Leisure v. Franklin County Court of Common Pleas*, 2006 WL 1281764 at *1, 3–4 (S.D. Ohio) (dismissing complaint containing only conclusory allegations, rather than material underlying facts showing a "meeting of the minds").

Women are a protected class, so that otherwise unlawful conspiracies against women are cognizable under § 1985(3). *Bremiller v. Cleveland Psychiatric Institute*, 879 F. Supp. 782, 789–90

(N.D. Ohio 1995).[2] Civil conspiracy claims must, however, meet strict pleading requirements. *Leisure*, *supra*, 2006 WL 1281764 at *4.

Considering the strictness with which I must view any civil conspiracy claim, I find plaintiff's § 1985(3) allegations insufficient because they are entirely conclusory. Although plaintiff refers to defendants' "numerous overt" conspiratorial acts, her complaint does not recite a single example, much less set forth facts sufficient to state a gender-based claim of conspiracy under § 1985(3).

Plaintiff's membership in a protected gender class does not, moreover, demonstrate, without more, class-based animus on the part of the defendants.

Plaintiff's claim under § 1985(3) fails, accordingly, to state a cause of action, and will be dismissed.

### B. Qualified Immunity

Although the plaintiff has adequately plead certain constitutional and other violations on the part of the individual officers, she must, before she can proceed further, overcome the shield of qualified immunity that protects government officials. Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985).

Qualified immunity protects police officers "whose conduct does not violate clearly established statutory or constitutional rights." *Kelm v. Hyatt,* 44 F.3d 415, 421 (6th Cir. 1995) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 808 (1982)). Plaintiff bears the burden of defeating qualified immunity. *Blake v. Wright,* 179 F.3d 1003, 1007 (6th Cir. 1999).

---

[2] The equal protection clause, in part, prohibits states from depriving persons of "life, liberty, or property, without due process of law," and from denying equal protection of the laws from those within its jurisdiction. U.S. Const. Amend. XIV § 1.

The Supreme Court established a two prong test to determine the validity of a qualified immunity defense. The court must first determine, while viewing all facts in a light most favorable to the plaintiff, "do the alleged facts show the officer's conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201 (2001). If the court finds a violation did occur, "the next sequential step is to ask whether the right was clearly established." *Id.* When making the second determination the court is to consider the specific context of the instant case and not rely upon general propositions. *Id.*

It is clearly established, in this Circuit, that individuals have a general right to be free from the unreasonable [and therefore excessive] use of non-lethal force. *Ciminillo,* 434 F.3d at 469. If plaintiff establishes a constitutional violation the shield of qualified immunity will be defeated.

## Conclusion

For the foregoing reasons, it is

ORDERED THAT:

1. Defendant City of Lima's motion to dismiss claims against it be, and the same hereby is granted;

2. Individual defendants' motion to dismiss claim of gender-based civil conspiracy be, and the same hereby is granted;

3. Defendant's motion to dismiss be, and the same hereby is otherwise overruled.

>  /s/ James G. Carr
>  James G. Carr
>  Chief Judge