IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jan M. Pheneger,                                    Case No. 3:06CV821

        Plaintiff,

      v.                                            ORDER

City of Lima, Ohio, et al.,

        Defendants.


This is a case alleging civil rights violations under 42 U.S.C. §§ 1983, 1985, 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff Jan M. Pheneger alleges that defendants Dunham, Haslett and Engelman, officers of the Lima, Ohio, Police Department, arrested her without probable cause and used excessive force in handcuffing her. Jurisdiction exists under 28 U.S.C. §§ 1331 and 1343.

Pending is defendants' motion to exclude the testimony of plaintiff's experts. [Doc. 42]. For the reasons that follow, defendants' motion shall be granted in part and denied in part.

**Background**

Officers Dunham, Haslett and Engelman arrested Pheneger around midnight on April 7, 2004. She was handcuffed for approximately twenty-five minutes. After being released, Pheneger went to St. Rita's emergency room for medical treatment. Dr. Edward Ignarski initially diagnosed bilateral wrist contusions. Later that day, April 8, 2004, she had photographs taken of her wrists.

Dr. Ignarski referred Pheneger to an orthopedic specialist, Dr. Schniegenberg. Ultimately, because of the allegedly permanent injuries incurred from the excessive tightness of the cuffs, plaintiff had carpal tunnel surgery.

Plaintiff claims the officers used excessive force when handcuffing her, causing carpal tunnel syndrome and Chronic Regional Pain Syndrome (CRPS) in her right wrist.

To state an excessive force claim, the plaintiff must show some objective evidence of injury. *Neague v. Cynkar,* 258 F.3d 504, 508 (6th Cir. 2001); *Patrick v. Vrablic,* 2005 WL 3088346, *5 (E.D. Mich. Nov. 16, 2005). In addition, plaintiff must present expert medical testimony to establish causation where the cause of her injury, as in this case, "is not within common knowledge." *Yanovich v. Sulzer Orthopedics, Inc.*, 2006 WL 3716812, *3 (N.D. Ohio) (citing *Conde v. Velsicol Chemical Corporation*, 24 F.3d 809 (6th Cir. 1994)).

## Discussion

Defendants contend that plaintiff's medical witnesses, Dr. Ignarski and orthopedic surgeon Dr. Gary Schniegenberg, should not be permitted to testify as to whether plaintiff's carpal tunnel syndrome was caused by tight handcuffs. They also assert that proposed expert Lt. Patrick Welsh of the Dayton, Ohio, Police Department, should not be permitted to testify as an expert on police procedure, or express opinions about the marks on Pheneger's wrists or the propriety of the handcuffing.

### 1. Admissibility Standards of Federal Rule of Evidence 702

Rule 702 of the Federal Rules of Evidence states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts

2

or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court described the "gatekeeping role" of trial judges and held that when considering a proffer of expert scientific testimony, Rule 702 requires that the judge "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, *supra*, 509 U.S. at 589. The Court identified several factors to aid the reliability assessment including: 1) whether the theory or technique can be or has been tested; 2) whether the theory has been subject to peer review and publication; 3) the known or potential rate of error; and 4) whether the theory or technique is generally accepted by the scientific community. *Id.* at 593-94.

In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Court made clear that the *Daubert* factors need not be applied in each instance; the *Daubert* inquiry is flexible, and a court is to consider the specific *Daubert* factors "where they are reasonable measures of the reliability of expert testimony." *Id*. at 152.

The objective of the *Daubert* gatekeeping requirement, the Court stated, is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. The Court emphasized that "'nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.'" *Id.* at 157 (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Defendants claim that Drs. Ignarski and Schniegenberg and Lt. Welsh are not qualified to express their opinion regarding liability, causation or damages. In response, Pheneger asserts that

she will be calling the doctors as fact witnesses who are, by the nature of their treatment of her, able to give their opinions. Moreover, she argues, ruling on the admissibility of their testimony at this time is premature. She maintains that Lt. Welsh should be permitted to testify because he will serve to educate the jury regarding police procedure.

Pheneger must show that these witnesses will be providing opinion evidence that is: 1) based on "knowledge, skill, experience, training, or education," 2) scientifically reliable, and 3) relevant.

### a. Dr Ignarski

Dr. Ignarski is a board certified physician, and was Pheneger's primary care physician before and after the handcuffing at issue. Dr. Ignarski also was working in the St. Rita's emergency room when Pheneger arrived for treatment. His emergency room record states that Pheneger's chief complaint related specifically to her hands and arms. The records also indicate that she described pain, numbness and tingling.

Dr. Ignarski performed a physical examination and noted erythema, or redness of the skin, "consistent with recent handcuffing to bilateral wrists. She also has mild to moderate swelling throughout the hands and wrists bilaterally, and they are sore to touch." Dr. Ignarski ordered wrist splints and referred Pheneger to Dr. Schniegenberg.

Dr. Ignarski is primarily a clinical practitioner, not a researcher. Clinical practitioners typically arrive at a diagnosis by using a method known as "differential diagnosis." The Sixth Circuit has defined this procedure:

> The method by which a physician determines what disease process caused a patient's symptoms. The physician considers all relevant potential causes of the symptoms and then eliminates alternative causes based on a physical examination, clinical tests, and a thorough case history. . . . A reliable differential diagnosis typically, though not invariably, is performed after "physical examinations, the taking of medical histories, and the review of clinical tests, including laboratory tests," and generally is

4

accomplished by determining the possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely.

*Hardyman v. Norfolk & Western Ry. Co.*, 243 F.3d 255, 260-261 (6th Cir. 2001) (citations omitted).

Dr. Ignarski will offer expert medical opinion that Pheneger suffers from Complex Regional Pain Syndrome (previously known as Reflex Sympathetic Dystrophy) as a result of the April 7th handcuffing. Dr. Ignarski treated Pheneger in the emergency room on April 8, 2004. According to office records, he did not examine her again until January, 2005. He then saw her several times between January, 2005, and July, 2007. In treating Pheneger, Dr. Ignarski made physical findings and completed lab work to determine the cause of her symptoms. He did not, however, complete a differential diagnosis on Pheneger, and at his deposition he conceded that his records alone are inadequate to support a diagnosis of CRPS.

Defendants' motion seeks to exclude Dr. Ignarski's opinions related to Pheneger's diagnosis and the causation of the alleged injuries. Defendants argue that Dr. Ignarski's diagnosis did not take into account several pre-existing conditions, which they contend could have caused, or contributed to her symptoms and complaints, including her psychiatric condition, arthritis in her neck, and bulging discs in her cervical spine. They also contend that he relied on the conclusions of other physicians, specifically the Cleveland Clinic, to make his diagnosis, and that the only way he could reach a diagnosis of CRPS was to assume that other physicians had also made that diagnosis.

The Sixth Circuit, like other circuits, has held that differential diagnosis satisfies the *Daubert* requirements for reliability. *See, e.g., Hardyman*, *supra*, 243 F.3d at 260-261; *Baker v. Dalkon Shield Claimant's Trust*, 156 F.3d 248, 252 (1st Cir. 1998); *Kannankeril v. Terminix Internatl., Inc.*, 128 F.3d 802, 808 (3d Cir. 1997). Another District Judge in our Circuit has held that, if the plaintiff

does not report or the doctor does not consider significant pre-existing conditions, the doctor has not performed a valid differential diagnosis, and therefore the opinion is unreliable. *Kolesar v. United Agri Products, Inc.*, 412 F.Supp.2d 686, 696-98 (2006) (Enslen, J.).

Dr. Ignarski was directly involved with the care and treatment of Pheneger and noted objective evidence of injuries. As her emergency room physician and primary care physician Dr. Ignarski can testify about his factual observations during his treatment of Pheneger. If adequately based on those observations, Dr. Ignarski can express his opinion that the injuries he saw and treated were consistent with constriction of her wrist or wrists.

But, not having been aware of several pertinent pre-existing conditions, Dr. Ignarski did not perform a valid differential diagnosis. Thus, he cannot give an opinion about the cause of plaintiff's carpal tunnel syndrome or CRPS.

### b. Dr. Gary Schniegenberg

Dr. Schniegenberg is board-certified orthopedic surgeon. Dr. Ignarski referred Pheneger to Dr. Schniegenberg following her treatment at the St. Rita's emergency room. Plaintiff first visited Dr. Schniegenberg on April 16, 2004, nine days after the handcuffing. Dr. Schniegenberg's office note indicates that Pheneger was being seen for "injury of bilateral wrist."At that time, she still had problems with numbness and tingling in the wrists.

On conducting a physical examination. Dr. Schniegenberg observed objective signs of swelling and bruising. His records indicate that he would try to control Pheneger's symptoms with medication and, if the symptoms persisted, order an EMG nerve conduction study.

Plaintiff returned to Dr. Schniegenberg on April 30, 2004, complaining of continuing problems with numbness and tingling. Medication not having relieved her symptoms, Dr.

Schniegenberg ordered an EMG. His differential diagnosis at that time was neuropraxia versus acute carpal tunnel injury. The EMG was, however, positive for carpal tunnel injury on the right wrist and Dr. Schniegenberg recommended surgery. On June 28, 2004, Dr. Schniegenberg performed right carpal tunnel release. Dr. Schniegenberg continued to examine plaintiff after the surgery.

In his discovery deposition, Dr. Schniegenberg testified that, in his expert medical opinion, the handcuffing of Pheneger on April 7, 2004, was an inciting event that caused definite injury to her right wrist: namely, the carpal tunnel syndrome. Dr. Schniegenberg testified that he personally examined Pheneger, reviewed her medical records, took a history, ordered tests, and reviewed the results of those tests. He also considered other possible causes (such as neuropraxia) and ruled them out as a possible causes of Pheneger's symptoms.

The gatekeeping role of a district judge should not supplant the adversary system or the role of the jury; rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, *supra*, 509 U.S. at 596. The judge's role is simply to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, potential to create confusion, and lack of probative value. *Wellman v. Norfolk and W. Ry. Co.*, 98 F.Supp.2d 919, 923-24 (S.D. Ohio 2000).

The defendants' concerns about Dr. Schniegenberg's opinions are issues for cross-examination, not grounds to preclude his opinions. Defendants' objections as to Dr. Schniegenberg's qualifications go to weight, not admissibility. As stated in *Hardyman v. Norfolk & Western Railway Co.*, 243 F.3d 255, 268 (6th Cir. 2001), "nothing would preclude Plaintiff's treating physicians from testifying that Plaintiff did indeed have CTS and as to what they have found, through their

7

experience, generally has caused their patients to contract CTS, i.e., what they have determined to be the diagnostic cause and effect."

Dr. Schniegenberg's opinions are  admissible because they have a reliable foundation and are relevant.

### c. Lt. Patrick Welsh

In addition to his experience for more than a decade with the Dayton Police Department, Lt. Welsh is an instructor with the Ohio Peace Officer Training Council, Sinclair Community College and the Dayton Police Department's Police Academy, where he teaches the Laws of Arrest and Use of Force.

Plaintiff seeks to have Lt. Welsh testify about the use and application of handcuffs.[1] As a police officer, Welsh is well versed in handcuffing procedures. He has the necessary "knowledge, skill, and experience, training, or education" to testify about the proper procedures for applying handcuffs. Such procedures are outside the common knowledge of most jurors. Lt. Welsh can testify about how handcuffs work, how to properly apply handcuffs and explain the double locking procedure [to which plaintiff, in part, attributes her injuries] and mechanism.

With regard to the marks on plaintiff's wrists, Lt. Welsh is familiar with the photographs taken after the incident. Defendants assert that Lt. Welsh did not know how long the marks in Pheneger's photographs lasted. Further they argue that Lt. Welsh did not know for a fact that the

---

[1]

Plaintiff also seeks to have Lt. Welsh testify about probable cause. Because my decision on defendants' motion for summary judgment, being filed concurrently with this order, holds as a matter of law that defendants had probable cause to arrest the plaintiff, proposed testimony by Lt. Welsh on that subject is moot.

handcuffs were too tight, because, according to them, it is possible that the cuffs were too loose and the marks were made as a result of Pheneger sitting on the cuffs or pulling against them.

In an attempt to replicate the marks seen in Pheneger's photographs, Lt. Welsh  handcuffed seated volunteers. Defendants object to Lt. Welsh giving his opinions about the photograph of the plaintiff's wrists and his attempted recreation of the handcuffing. They argue that his demonstration was unreliable because it used one male and one female subject, who differed in size and age, who were handcuffed tightly (but not loosely), and who intentionally tried to make marks on their hands.

The gatekeeping role requires an analysis of whether the expert's opinion is relevant to the facts at issue. *See Daubert*, *supra*, 509 U.S. at 591-93. This requirement ensures a sufficient "fit" between the testimony and the issues at trial. *See United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993). Thus, an expert's testimony is admissible under Rule 702 if it is predicated upon a reliable foundation and is relevant.

As noted above, Lt. Welsh possesses expert knowledge as to the use and application of handcuffs and will be permitted to testify as to those matters. His training and experience as a police officer provide him with knowledge about the marks that handcuffs leave on individuals, and he will be permitted to testify to the types of marks handcuffs can leave under various circumstances. He can also testify that the marks on plaintiffs' wrists are consistent with or similar to those made by handcuffs in some circumstances.

Lt. Welsh, however, is not an authority on handcuff *injuries*. He cannot state, with a sufficient degree of professional certainty, that handcuffing, much less improper handcuffing, caused either the marks or the alleged resulting injuries.

9

In addition, I find that his experiment/demonstration did not replicate the conditions and circumstances that plaintiff claims caused her injuries. There is no reason to believe that Lt. Welsh could consistently, independently or reliably reproduce his experiment and obtain the same "results." Therefore, Lt. Welsh cannot give opinions about the cause for the marks on Pheneger's wrists or the "results" of his experiment.

**Conclusion**

For the foregoing reasons, it is hereby

ORDERED THAT the defendants' motion to exclude plaintiff's experts [Doc. 42] be, and the same hereby is:

1. Granted as to Dr. Ignarski;

2. Denied as to Dr. Schniegenberg; and

3. Grated in part, and denied in part, as to Patrick Welsh.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge

10
